**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
LEAD CASE NO. 08-61317-CIV-GOLD/MCALILEY**

AURELIUS CAPITAL MASTER, LTD.,
et al.,

      Appellants,

v.

TOUSA INC., et al.,

      Appellees.
_____/

**APPELLEES' MOTION TO DISMISS APPEALS OF MINORITY NOTEHOLDERS
AND SECOND LIEN LENDERS AS IMPROPER INTERLOCUTORY APPEALS AND
<u>ON EQUITABLE MOOTNESS GROUNDS, INCLUDING MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

Page

**BACKGROUND** ...........................................................................................................................1

**MEMORANDUM OF LAW** ......................................................................................................4

I.      **The Appellants' Interlocutory Appeals of the Consensual Cash Collateral Order Should be Dismissed.**................................................................................4

      A.      **The Cash Collateral Order is not a Final Order That May be Appealed as of Right.**......................................................................5

      B.      **Leave to Appeal the Cash Collateral Order Should Not be Granted.** ...............6

II.     **The Appeals Should be Dismissed On the Ground of Equitable Mootness.** ................8

**CONCLUSION** ........................................................................................................................11

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ....................................................................................... 7

*Clear Channel Outdoor, Inc. v. Knuper (In re PW, LLC)*,
   391 B.R. 25 (BAP 9th Cir. 2008)................................................................................ 8

*Figueroa v. Wells Fargo Bank N.A.*,
   382 B.R. 814 (S.D. Fla. 2007) ................................................................................ 5, 6

*First Union Real Estate Equity & Mtg. Inv. (In re Club Assocs.)*,
   956 F.2d 1065 (11th Cir. 1992) ......................................................................... 8, 9, 10

*FXM, P.C. v. Gordon*,
   Civ. No. 1:07-CV-1642, 2007 WL 3491274 (N.D. Ga. Nov. 6, 2007) ............................ 6

*In re Klein Sleep Prods., Inc.*,
   78 F.3d 18 (2d Cir. 1996) ........................................................................................... 9

*In re Saber*,
   264 F.3d 1317 (11th Cir. 2001) ............................................................................. 5, 6

*In re Shepard Clothing Co., Inc.*,
   No. Civ. A. 01-11853-GAO, 2002 WL 17390211 (D. Mass. July 26, 2002).................. 10

*In re Sunstate Dairy & Food Prods. Co.*,
   Case No. 92-570-CIV-T-17, 1992 WL 161138, (M.D. Fla. June 29, 1992) ................ 4, 6

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ............................................................................. 6, 7

*Midland Asphalt Corp. v. United States*,
   489 U.S. 794 (1989)................................................................................................... 5

*Sewanee Land & Cattle, Inc. v. Lamb (In re Sewanee Land & Cattle, Inc.)*,
   735 F.2d 1294 (11th Cir. 1984) .................................................................................. 9

*Smith v. United States (In re Holywell Corp.)*,
   911 F.2d 1539 (11th Cir. 1990),
   *rev'd on other grounds*, 503 U.S. 47 (1992).................................................................. 8

**Statutes**

11 U.S.C. § 503................................................................................................................ 9

28 U.S.C. § 1292(b).......................................................................................................... 6

28 U.S.C. § 158(a) ............................................................................................................... 4

28 U.S.C. § 158(a)(3) ............................................................................................................ 6

**Rules**

Fed. R. Bankr. P. 8003(a) ..................................................................................................... 6

Appellees, TOUSA, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Appellees") move to dismiss the above-captioned bankruptcy appeals on the ground that the appeals are improper interlocutory appeals and on the ground of equitable mootness. In support of their Motion, Appellees state as follows:

## BACKGROUND

1. During April and May of 2008, in connection with their chapter 11 proceedings in the United States Bankruptcy Court (the "Bankruptcy Court"), the Debtors negotiated the use of cash collateral with both their prepetition secured first lien lenders (the "First Lien Lenders") and the official committee of unsecured creditors (the "Creditors' Committee"). *See* May 20, 2008 Am. Decl. of John R. Boken in Supp. of Mot. for Cash Collateral [D.E. 1009] ("May 20 Boken Declaration") at ¶ 32.[1] Initially, the Debtors were unable to reach a consensus with both the First Lien Lenders and the Creditors' Committee; as a result, the Debtors engaged in negotiations solely with the First Lien Lenders. *Id* at 33. Although these negotiations appeared to break down on several occasions, in the end, the Debtors entered into an agreement with the First Lien Lenders that authorized the Debtors' use of cash collateral. *Id.* at ¶ 35.

2. On May 19, 2008, the Debtors filed a Supplemental Motion for Use of Cash Collateral [D.E. 999] (the "Cash Collateral Motion").

3. On May 21, 2008, the Creditors' Committee, as well as Appellants Aurelius Capital Master Ltd., Aurelius Capital Partners, LP, GSO Special Situations Fund L.P., GSO

---

[1] In this Motion, unless otherwise stated, all references to "D.E. ____" refer to cited pleadings from Bankruptcy Case No. 08-10928-BKC-JKO that are included in the Record on Appeal transmitted to this Court by the Clerk of the Bankruptcy Court. References to transcripts of hearings will include the hearing date. The names of some pleadings have been abbreviated for convenience.

Special Situations Overseas Master Fund Ltd., GSO Credit Opportunities Fund (Helios), L.P., and Carlyle Strategic Partners (collectively, the "Minority Noteholders"), filed objections to the Cash Collateral Motion. *See* Obj. of the Creditors' Comm. to Debtors' Mot. [D.E. 1027] and Omnibus Obj. to Debtors' Mot. [D.E. 1044]. Appellant Wells Fargo, the Administrative Agent to the lenders under the Second Lien Credit Agreement (collectively, the "Second Lien Lenders"), did not object to the Debtors' Motion, but rather submitted a "Statement" indicating that it "generally consents" to the terms of the Cash Collateral Order, but disagreed with certain specific provisions. *See* Statement of Wells Fargo Bank, N.A., [D.E. 1038] at ¶ 5. The Second Lien Lenders subsequently filed a "Supplemental Statement and Limited Objection" indicating that they "d[id] not object to much of the Proposed Order but do[] have . . . limited objections." *See* Supplemental Statement And Limited Obj. of Wells Fargo Bank, N.A., [D.E. 1140] at ¶ 2.

4.   Hearings were held on the Debtors' Cash Collateral Motion on May 22, 2008 and June 10, 2008. In addition to the written declaration submitted by John Boken, the Debtors' then Chief Restructuring Officer, the Debtors presented Mr. Boken and Tommy A. McAden, the Debtors' Chief Financial Officer, as witnesses at the hearings. After receiving evidence and hearing argument, the Bankruptcy Court authorized the Debtors' access to cash collateral. *See* June 10 Tr. [D.E. 1215] at 269:10-11. In doing so, the Court explained its reasoning:

> Whether I apply a business judgment test and defer to the sound business judgment of the debtor, or look at this from the question of the best interest of the estate, I have to conclude that a consensual cash collateral agreement is decidedly in the debtors' and all constituencies' best interest.

*Id.* at 268:21-269:2. After certain subsequent negotiations the Bankruptcy Court entered the Stipulated Final Order (I) Authorizing Limited Use of Cash Collateral Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code, and (II) Granting Replacement Liens, Adequate Protection

2

and Super Priority Administrative Expense Priority to Secured Lenders [D.E. 1226] (the "Cash Collateral Order").

5. Under the terms of the Cash Collateral Order, the Debtors were authorized to use the cash collateral of their prepetition secured lenders (the "Prepetition Secured Lenders") consistent with an agreed upon budget for a period of six months. *Id.* at ¶ 3. The Cash Collateral Order also included a provision whereby the Debtors would make a payment of $175 million with the option to pay an additional $15 million in the Debtors' sole discretion (the "Paydown") to the First Lien Lenders. *See Id.* at ¶ 7(d).

6. The Cash Collateral Order also contained a provision pursuant to which the Paydown would be on a non-final basis and subject to robust disgorgement provisions. *See* Cash Collateral Order at *¶* 7(d). Specifically, the Cash Collateral Order required the recipients of the Paydown to agree to, among other things: submit to the jurisdiction of the Bankruptcy Court with respect to any adversary proceeding; accept service of process of the complaint and summons for any adversary proceeding; and provide certain proof of their liquid assets. *Id.* The Debtors required that the Cash Collateral Order include terms relating to disgorgement because they recognized that the Creditors' Committee was seeking to bring an action against the Prepetition Secured Lenders that could result in the avoidance of the Prepetition Secured Lenders' liens. *See* May 20 Boken Declaration at ¶ 40.

7. The Cash Collateral Order is the key operational order in the Debtors' chapter 11 cases. Specifically, since the Bankruptcy Court entered the Cash Collateral Order:

- the Debtors have used the Secured Lenders' cash collateral to fund the Debtors' business operations, including their continued homebuilding operations, day-to-day expenses and expenses incurred as a result of their chapter 11 proceedings. Cash collateral has also been used to make distributions pursuant to various orders of the Bankruptcy Court. *See* September 23, 2008 Decl. of John R. Boken in Supp. of Mot. to Dismiss, attached hereto as Exhibit A (the "Sept. 23 Boken Declaration") at ¶ 7;

3

- the Bankruptcy Court has entered orders permitting the Debtors to assume more than 150 non-residential real property and executory contracts; to the extent there were any monetary defaults under such leases or contracts, the Debtors used cash collateral to satisfy such claims. *Id.* at ¶ 8; and

- the Debtors have used cash collateral to settle various claims and counterclaims in their chapter 11 proceedings. *Id.* at ¶ 9.

8. Absent extension by agreement, the Cash Collateral Order is currently set to expire on December 17, 2008. *Id.* at ¶ 11. The Debtors will not have emerged from chapter 11 by that time. *Id.* at ¶ 12. Accordingly, additional negotiations and requests for relief from the Bankruptcy Court concerning further authorization for the Debtors to continue to use cash collateral will be required. Oral argument on these appeals is scheduled for December 19, 2008.

**MEMORANDUM OF LAW**

I. **The Appellants' Interlocutory Appeals of the Consensual Cash Collateral Order Should be Dismissed.**

Jurisdiction to hear bankruptcy appeals is vested in the district court by 28 U.S.C. § 158(a), which states, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; . . . and (3) with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a). "The question of whether [an] order is a final order is important because final orders are appealable as of right, whereas interlocutory orders require leave of the appellate court." *In re Sunstate Dairy & Food Prods. Co.*, No. 92-570-CIV-T-17, 1992 WL 161138, at *1 (M.D. Fla. June 29, 1992). Here, the Cash Collateral Order is not "final" and thus not appealable as a matter of right. Moreover, Appellants cannot satisfy the requirements necessary, nor does it make good sense in the context of this case, to grant permission for leave to hear such appeals on an interlocutory basis.

### A. The Cash Collateral Order is not a Final Order That May be Appealed as of Right.

The United States Supreme Court has defined a final order as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (citation omitted). In bankruptcy, courts recognize that the "statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation" by virtue of a bankruptcy case being "an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed." *Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 820 (S.D. Fla. 2007) (internal citations and quotations omitted). Nevertheless, courts in this circuit continue to look to the standard enunciated above when determining whether a bankruptcy court order is final for purposes of appeal: "As with other types of cases, a final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *In re Saber*, 264 F.3d 1317, 1324 (11th Cir. 2001).

The Cash Collateral Order being appealed here does not meet this finality standard. Indeed, the terms of the Cash Collateral Order make it clear that this order is not final for purposes of appeal. For example, the disgorgement provisions require disgorgement of the Paydown in the event the First Lien Lenders' prepetition liens are avoided or reduced. Thus, the Cash Collateral Order not only allows the Debtors and their other stakeholders to continue the reorganization, it provides for disgorgement of the Paydown if the litigation against the Prepetition Secured Lenders proves successful.

Further demonstrating the lack of finality, the Debtors and their secured lenders will be addressing this same issue before the Bankruptcy Court in a matter of months. This is because absent an extension, the Cash Collateral Order expires on December 17, 2008 (two days before

5

oral argument on these appeals). That being the case, the Cash Collateral Order is a far cry from an order that "ends the litigation on the merits," and can hardly be characterized as an order that "leaves nothing for the [Bankruptcy] Court to do [other than] execute its judgment." *In re Saber*, 264 F.3d at 1324; s*ee also Sunstate Dairy*, 1992 WL 161138, at *2.

### B. Leave to Appeal the Cash Collateral Order Should Not be Granted.

For the reasons set forth above, the Cash Collateral Order is interlocutory in nature. As a consequence, the immediate review of the Cash Collateral Order may only be permitted with leave of court. *See* 28 U.S.C. § 158(a)(3). "The Eleventh Circuit has made clear that the scope of interlocutory appeals is to be limited [and t]he appeal provided for under §§ 158(a) and 1292(b) should be permitted only in exceptional circumstances . . . in order to avoid protracted and expensive litigation." *FXM, P.C. v. Gordon*, No. 1:07-CV-1642, 2007 WL 3491274, at *2 (N.D. Ga. Nov. 6, 2007). As an initial matter, the Appellants did not seek leave to appeal or articulate any basis for the Court to grant leave to appeal this interlocutory order as required. *See* Fed. R. Bankr. P. 8003(a).

Regardless, typically, courts apply the standards set forth in 28 U.S.C. § 1292(b) when determining whether an interlocutory appeal of a bankruptcy court order should be granted. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004). As this Court has recognized, under § 1292(b), a district court may grant leave to appeal an interlocutory order only if it determines that (i) the order involves a controlling question of law, (ii) the question of law is one over which there exists a substantial ground for difference of opinion, and (iii) an immediate appeal would materially advance the ultimate determination of the litigation. *See Figueroa*, 382 B.R. at 823. Leave must be denied if the party seeking leave to appeal fails to establish any one of the three elements. *Id.* at 824. Here, the Cash Collateral Order does not meet any of these criteria.

*1. The Appeals Do Not Present Controlling Questions of Law.* To satisfy the first criteria, the appellants must show that there is "a question of law, and it is controlling." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,* 219 F.3d 674, 675 (7th Cir.2000). An issue meets this exacting standard only if the issue involved addresses a question of "pure" law, or matters that can be decided quickly and cleanly without having to study the record. *McFarlin*, 381 F.3d at 1258, 1260-62 (internal quotations and citations omitted). "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence." *Id*. at 1259.

Here, neither appeal presents a controlling issue of law. The primary dispute on appeal is whether the Debtors produced sufficient *evidence* at the hearing to support the Bankruptcy Court's approval of the Cash Collateral Order. A dispute that is primarily factual in nature cannot, by definition, satisfy the "controlling question of law" element. *Id*. at 1258 ("[t]he term 'question of law' does not mean the application of settled law to fact [or] . . . any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact."); s*ee also, Ahrenholz*, 219 F.3d at 674, 676-77. Simply put, this consolidated appeal does not present a controlling question of law.

*2. The Appeals Do Not Present an Issue of Law Which There Is A Substantial Ground for Difference of Opinion.* The Appellants cannot satisfy this criteria either. As discussed fully in the Answer Brief, the Debtors' decision to enter into a consensual agreement concerning the use of cash collateral with the First Lien Lenders is governed by the business judgment standard. *See* Answer Brief at 22-26. But even if the "best interests" test espoused by the Minority Noteholders is applied, the Bankruptcy Court concluded that the Debtors satisfied this test. June 10 Tr. [D.E. 1215] at 268:21-269:2.

7

*3. Interlocutory Appeal Of the Cash Collateral Order Will Not Materially Advance the Debtors' Reorganizations.* An interlocutory appeal of the Cash Collateral Order will not materially advance the Debtors' reorganization, nor will the Bankruptcy Court or the parties in interest save any time or expense if this appeal is permitted. To the contrary, during the pendency of this appeal, the Debtors may file a proposed plan of reorganization, the parties will be back before the Bankruptcy Court with respect to cash collateral issues and the case will continue to proceed (under the terms of the Cash Collateral Order) in its normal course. Indeed, the Debtors continue to use cash collateral every day to operate their business in accordance with the Cash Collateral Order. A reversal of the Cash Collateral Order, by contrast, would result in the Debtors' chapter 11 cases stalling, and absent immediate authorization to access significant cash collateral, the potential liquidation of the Debtors, to the detriment of all those involved, including the Appellants.

**II.     The Appeals Should be Dismissed On the Ground of Equitable Mootness.**

As a separate and independent ground, the Court should dismiss the appeals on the ground of equitable mootness. "Equitable mootness requires the court to look beyond impossibility of a remedy to the consequences of the remedy and the number of third parties who have changed their position in reliance on the order that is being appealed." *Clear Channel Outdoor, Inc. v. Knuper (In re PW, LLC)*, 391 B.R. 25, 33 (BAP 9th Cir. 2008) (internal quotations omitted). "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief." *First Union Real Estate Equity & Mtg. Inv. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir. 1992). Stated differently, the doctrine of equitable mootness allows an appellate court to dismiss an appeal based upon the lack of power to rescind certain transactions. *Smith v. United States (In re Holywell Corp.)*, 911 F.2d 1539, 1543 (11th Cir. 1990), *rev'd on other grounds*, 503 U.S. 47 (1992).

8

In this case, the Debtors respectfully submit that it is simply no longer possible, as a practical matter, for this Court to rescind numerous transactions since the entry of the Cash Collateral Order. For example, the Debtors have assumed more than 150 leases of nonresidential real property. To the extent there were any monetary defaults under such leases or contracts, the Debtors used cash collateral to satisfy such claims. *See* Sept. 23 Boken Declaration at ¶ 8. Moreover, having provided adequate assurance through the Cash Collateral Order of future performance under these assumed contracts and leases, the Debtors have elevated what would otherwise have been classified as prepetition general unsecured claims to postpetition administrative expense claims that must be paid in full for the Debtors to emerge from chapter 11. *See* 11 U.S.C. § 503; *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 18 (2d Cir. 1996).

Additionally, under Eleventh Circuit law, the equitable mootness inquiry involves subsidiary issues. *In re Club Assocs.*, 965 F.2d at 1069 n.11. The first issue is whether a stay pending appeal has been obtained and, if not, why not. Here, neither Appellant has sought a stay pending appeal (or even an expedited appeal). This failure to attempt to protect their rights and justifiable reliance of third parties militates in favor of a finding of equitable mootness.[2] *Sewanee Land & Cattle, Inc. v. Lamb (In re Sewanee Land & Cattle, Inc.)*, 735 F.2d 1294, 1295 (11th Cir. 1984).

The Court then analyzes the types of transactions that have been consummated. *In re Club Assocs.*, 965 F.2d at 1069 n.11. As set forth in the Sept. 23 Boken Declaration, the following transactions were consummated based upon entry of the Cash Collateral Order:

---

[2] This is particularly the case given that the Appellants' failure to seek a stay prevented the Debtors from having the opportunity to extending their initial DIP financing, which expired on June 23, 2008, and which could have provided continued interim access to Cash Collateral while the Appeals were pending. Now, reversal of the Cash Collateral Order would irreparably harm the Debtors by leaving them without access to Cash Collateral to fund their operations while searching for alternative financing.

(i) settlements of various claims and counterclaims; (ii) assumption of nonresidential real property leases; (iii) the entry into contracts for the continued sale of homes; and (iv) payments to vendors and employees. *See* Sept. 23 Boken Declaration at ¶ 7-9. Reversing the Cash Collateral Order would necessarily require undoing any obligations that the Debtors have subsequently undertaken in reliance on such authority. This is, for all intents and purposes, impossible given the scope of the transactions and is something courts are often hesitant to do. *See, e.g., In re Shepard Clothing Co., Inc.*, No. Civ.A.01-11853-GAO, 2002 WL 1739021, at *1 (D. Mass. July 26, 2002) (finding that appeals of cash collateral orders often are moot on appeal and citing cases where the cash collateral was spent before the conclusion of the appeal). Moreover, the Cash Collateral Order will expire before oral argument on these appeals is even heard.

The next issue that needs to be examined is what type of relief the appellant seeks on appeal. *In re Club Assocs.*, 965 F.2d at 1069 n.11. Here, Appellants seek reversal of the Cash Collateral Order in its entirety. The next (and last applicable) issue is what effect would granting relief have on the interests of third parties not before the court. *Id.* Here, the effects of reversal of the Cash Collateral Order would be substantial and far reaching upon third parties who are not before this Court and only tangentially involved in the chapter 11 cases in the most remote sense of the word. Reversal of the Cash Collateral Order would take away the Debtors' only source of operating cash and leave the Debtors unable to perform on countless contracts and transactions entered into subsequent to, and in reliance on, the Cash Collateral Order. Specifically, reversal would (i) displace the Debtors' employees; (ii) leave contractors and suppliers who agreed to work with the Debtors without a source of payment — and thus likely cause them to no longer

work with the Debtors; and, as a result of these things, (iii) strand homebuyers who have contracted to buy homes from the Debtors. Sept. 23 Boken Declaration at ¶ 10.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the appeals of the Minority Noteholders and Second Lien Lenders be dismissed.

Appellees state that they have made a reasonable effort to confer with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve by cooperation the issues raised herein as required by Local Rule 7.1(A)(1)(3).

WHEREFORE, Appellees respectfully request that the Court enter an Order dismissing the Minority Noteholders' and Second Lien Lenders' appeals of the Cash Collateral Order as improper interlocutory appeals and as equitably moot.

Dated: September 26, 2008

Respectfully submitted,

**BERGER SINGERMAN, P.A.**

/s/ Paul Steven Singerman
Paul Steven Singerman (Florida Bar No. 378860)
200 Biscayne Boulevard, Suite 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

-and-

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (New York Bar No. 4207122)
Paul M. Basta (New York Bar No. 2568046)
M. Natasha Labovitz (New York Bar No. 2813251)
Citigroup Center
153 East 53rd Street
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Co-Counsel to the Debtors/Appellees*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 26th day of September, 2008 a true and correct copy of the foregoing was served via U.S. Regular Mail, postage prepaid, upon Scott L. Baena, Esq., Bilzin Sumberg Baena Price & Aexelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131, counsel for Second Lien Lenders, and Paul J. Battista, Genovese, Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131, counsel for Minority Noteholders.

/s/ Paul Steven Singerman<br>Paul Steven Singerman